IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Michael E. Hegarty**

Civil Action No. 09-cv-00890-MEH-MJW

TURF MASTER INDUSTRIES, INC., and
SHERYL GLASGOW,

      Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS FOR EL PASO COUNTY, COLORADO,
GAYLE JACKSON, in her individual and official capacities, and
WILLIAM LOUIS, in his individual and official capacities,

      Defendants.

---

## ORDER ON MOTION TO DISMISS

---

      Pending before the Court is Defendants' Motion to Dismiss Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed June 11, 2009; docket #9]. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of the United States Magistrate Judge. The matter is briefed, and oral argument will not materially assist the Court in resolving the motion. The Court orders that, for the reasons stated herein, the motion is **granted**.

## BACKGROUND

      On April 17, 2009, Plaintiffs filed a Complaint in this action alleging the following facts, which the Court accepts as true for purposes of the within motion. Plaintiff Turf Master Industries, Inc. is owned and operated by Plaintiff Sheryl Glasgow, who owns a five-acre parcel of real property

in El Paso County, Colorado (referred to herein as the "Property" or "Chaparral Property").  The Property was, at all relevant times, zoned A-1 Agricultural District of Chapter IV- Section 6 of the El Paso County Land Development Code and is located at 4515 Chaparral Road, El Paso County, Colorado.  Among the "Permitted Principal Uses," Section 6 of the Code provides that the Plaintiffs may operate a "Nursery, Wholesale" on the Property, which is specifically defined as follows: an area where trees, shrubs, or plants are grown or warehoused for transplanting or for use as stocks for budding and grafting.  The Plaintiffs use their property for growing and warehousing trees and shrubs for transplanting. The Plaintiffs also maintain a greenhouse on the Property for use in the operation of the nursery.

The Plaintiffs allege that they are permitted, pursuant to the Chapter IV-Section 6, to conduct an accessory use on the Property.  An "accessory use" is defined under the Code as any use which is customary and subordinate.  Because Plaintiff Glasgow sought to have her entire business, inclusive of nursery, wholesale, landscaping and maintenance, operate from the Chaparral Property, Plaintiffs needed the landscaping and maintenance portion to be authorized as an accessory use to their "Nursery, Wholesale" operation.  Thus, in or around October 1997, and prior to purchasing the Property, Glasgow gave the El Paso County Planning Department notice of intent to operate a Wholesale Nursery Operation and inquired as to permitted uses under Chapter IV-Section 6. Glasgow was given a section of the code and told that the landscape business did not fall under any particular chapter of the Code.

On January 20, 1998, Glasgow moved onto the Property and began preparing to build a

nursery, wholesale and to relocate her business operations.  At that time, she was advised that in order to relocate the entire business operation, a variance would be required to cover landscape and maintenance.  In 2001, Glasgow became aware that a neighbor objected to her use of the Property, because the proposed use was not residential.  Defendant Officer Gayle Jackson informed Glasgow that this sole objection would disqualify an application for a variance.  Based upon this information, Glasgow never submitted the variance application.

In or about April 2000, Plaintiffs received a building permit to construct the utility building and greenhouse.  Although all permits were validly issued, Plaintiffs allege that they continued to be a target of harassment from a specific neighbor causing the Plaintiffs unreasonable costs in addressing the County's burdensome oversight.

On September 19, 2001, after Plaintiffs relocated their business operations, the Defendant Board of County Commissioners for El Paso County (Board) filed a complaint in the District Court of El Paso County, claiming that Glasgow was conducting business in violation of the Code, and seeking to enjoin Glasgow permanently from operating the nursery, landscape maintenance and snow removal business.

On March 23, 2004, the El Paso County District Court entered an order ruling that the defined term "Nursery, Wholesale" must be read in conjunction with the separately defined term "Wholesale" to determine whether the activities are permitted under the Code, holding that the principal use of the Property for a "Nursery, Wholesale" and the accessory use of the Property for a landscape maintenance and snow removal business violated the Code, and enjoining Plaintiffs

from such uses.

On September 15, 2005, the Colorado Court of Appeals affirmed in part and vacated in part the District Court's ruling finding that, while the wholesale nursery was a permitted use, the landscape business was not a permitted use and affirmed the injunction as to such use.  At the same time, the Court of Appeals vacated that part of the trial court's order allowing the Board to inspect Plaintiffs' property and business records, and prohibiting Plaintiffs from expanding their wholesale nursery operation without prior Board approval.  In November 2005, Glasgow met with the El Paso County Attorney, who agreed to stay enforcement of the pending contempt citation until the new zoning code was approved. Glasgow alleges that she and others attended zoning code workshops advocating changes that would address the landscape maintenance and snow removal business as an accessory use in A-1 zoning.

Plaintiffs allege that, prior to the new zoning code being approved, Commissioner Douglas Bruce demanded that the County Attorney cite Glasgow for contempt of court because she had not yet moved the landscape maintenance business to another location.  On September 30, 2006, the trial court dismissed the citation but entered an order giving the Plaintiffs until October 10, 2006 (later extended to November 3, 2006) "to come into compliance with the March 24, 2004 injunction order."   On November 3, 2006, Glasgow moved the landscape maintenance and snow removal portion of the business to another location at 4739 Garnet Dr. in Park Vista (the "Garnet Property"), which is zoned I-2 Limited Industrial.

Plaintiffs allege that, after Glasgow moved the landscape and maintenance business to the

Garnet Property, Officer Jackson and a private investigator, Steve Pease, began conducting extensive surveillance of the Plaintiffs' employees by following them from the Garnet Property to the Chaparral Property and to other locations.

On December 14, 2006, the Board filed a Motion for Citation for Contempt of Court using as a basis the trial court's March 23, 2004 order. On March 13, 2007, the trial court issued an order holding Plaintiff Glasgow in contempt. On March 27, 2007, the Board filed and served a Notice of Sentencing Hearing, scheduling sentencing for the contempt citation for April 13, 2007. On March 31, 2007, Glasgow held a "Grand Reopening" of the greenhouse and nursery on the Chaparral Property. Just days before the scheduled hearing, on April 11, 2007, the County Attorney, Defendant William Louis, e-filed with the trial court a collection of grievance letters from angry neighbors protesting the greenhouse and nursery operation. At the April 13, 2007 hearing, the trial court allegedly considered the grievance letters, imposed a $10,500 fine, and required Plaintiffs to pay attorney's fees and costs.

Meanwhile, on April 4, 2007, the Board filed another Motion for Citation for Contempt of Court alleging that the "Grand Reopening" was another violation of the Code and, therefore, another violation in contempt of court. On May 22, 2007, Glasgow filed a motion to dismiss the third Contempt Citation arguing that the zoning code did not apply to the sale conducted by the Plaintiffs. On June 11, 2007, the Board filed its own motion to dismiss the third citation, which the trial court granted on June 12, 2007, and dismissed the third citation.

Plaintiffs' Complaint alleges seven claims for relief against the Board, Mr. Louis, and

Officer Jackson, asserting constitutional claims for violations of the due process and equal protection clauses of the Fourteenth Amendment (including for vindictive prosecution, ex parte contact, and selective enforcement), for retaliation under the First Amendment and for declaratory relief.  In addition, the Plaintiffs ask the Court to interpret and apply two Colorado statutes for the protection of Plaintiffs' property.

Defendants responded to the Complaint by filing the within Motion to Dismiss contending that all of Plaintiffs' claims are barred for lack of subject matter jurisdiction by the *Rooker-Feldman* doctrine, that Plaintiffs' constitutional claims are time-barred under 42 U.S.C. § 1983, that the individual Defendants enjoy absolute and qualified immunity for Claim Five, that Plaintiffs failed to allege sufficient facts to demonstrate a protected property right or arbitrary and capricious actions for their due process claims, and that any state law claims asserted by Plaintiffs are barred by sovereign immunity pursuant to the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-101, *et seq*.  Plaintiffs timely responded and the motion is ripe for adjudication.

## DISCUSSION

I.  **Standard of Review**

    A.  Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are

courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.  Accordingly, the Plaintiffs in this case bear the burden of establishing that this Court has jurisdiction to hear their claims.  Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225.

B.     Dismissal under Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570).  Plausibility, in

7

the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Twombly* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

## II.    Analysis

Typically, courts must determine whether they retain jurisdiction over a matter before addressing statute of limitations challenges. *See Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574 577 (1999) and *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101-02 (1998) ("jurisdiction generally must precede merits in dispositional order")). "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas,* 526 U.S. at 577.

With respect to subject matter jurisdiction,[1] the Plaintiffs allege that this Court has

---

[1]There is no challenge to personal jurisdiction in this case, and the Court sees no reason to raise the issue *sua sponte*.

8

jurisdiction over their constitutional claims pursuant to 28 U.S. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship).  The Plaintiffs do not invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any state law claims.

      A.    <u>Diversity Jurisdiction</u>

To satisfy diversity jurisdiction, the Plaintiffs must allege that the amount in controversy is more than $75,000.00 <u>and</u> that the parties reside in different states.  *See* 28 U.S.C. § 1332(a) (West 2009).  Here, the Complaint alleges that all parties are residents of Colorado.  Therefore, the Plaintiffs have failed to demonstrate that the Court has diversity jurisdiction in this matter.

      B.    <u>Federal Question Jurisdiction</u>

The Complaint alleges that "there is a federal question with respect to a violation of the 14th Amendment of the United States Constitution."  The Complaint contains seven claims for relief, six of which (Claims One through Six) implicate various constitutional violations.  Claim Seven asks the Court to interpret and apply two Colorado statutes for the protection of Plaintiffs' property.

In their motion, Defendants assert that the Court lacks subject matter jurisdiction over Plaintiffs' constitutional claims pursuant to the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is a jurisdictional prohibition that is based on 28 U.S.C. § 1257, which holds that federal review of state court judgments may be obtained only in the United States Supreme Court.  *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (holding that the *Rooker-Feldman* doctrine bars "what in substance would be

appellate review of the state judgment in a United States district court, based on [a] claim that the state judgment itself violates . . . federal rights").  The doctrine is limited in its scope and is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Bolden v. City of Topeka*, 441 F.3d 1129, 1142-43 (10th Cir. 2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 1521-22 (2005)).  Thus, the doctrine divests a district court of jurisdiction where (1) the party against whom the doctrine is invoked was a party in the previous proceeding, (2) the claim in the federal suit was actually raised or is "inextricably intertwined with" the state court judgment, and (3) the federal claim is not merely parallel to the state court claim.  *Lance v. Dennis*, 546 U.S. 459, 462 (2006).

As stated, *Rooker-Feldman* bars not only consideration of issues that were actually presented to and decided by a state court, but also consideration of constitutional claims that are "inextricably intertwined with" issues that were ruled upon by a state court.  *See Feldman,* 460 U.S. at 483-84 n. 16.  A constitutional claim is inextricably intertwined with issues reached by a state court "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995).  In short, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse some action or decision by a state court, or would effectively void its ruling.  *Id*.

To determine whether claims are inextricably intertwined, "the fundamental and appropriate

question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996); *see also Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 707 (10th Cir. 2004) (holding that courts should ask "'whether the state-court judgment caused, actually and proximately, the injury for which [the party] seeks redress'") (quoting *Kenman Engineering*, 314 F.3d at 476).

Here, the Plaintiffs' allegations stem from a complaint that was filed by the Board in state court in 2001 alleging that Plaintiff Glasgow was conducting business in violation of the El Paso County Land Development Code, and seeking to enjoin Glasgow permanently from operating the nursery, landscape maintenance and snow removal business on the Chaparral property. In March 2004, the state court ruled in the Board's favor and entered an injunction against Glasgow's use of the nursery, landscape and snow removal business on the property. In September 2005, the Colorado Court of Appeals affirmed in part and reversed in part finding that the nursery was a permitted use on the property, but that the injunction as to the landscape business was proper. Subsequently, the Board sought to enforce the surviving portion of the March 2004 injunction against Plaintiffs for what the Board considered to be improper uses of the subject property.

Defendants contend that Plaintiffs are seeking to recover damages for being required to comply with orders issued and affirmed by state courts and, therefore, are barred from bringing their claims under the *Rooker-Feldman* doctrine. Defendants assert that Plaintiff Glasgow was a party to the state court actions and Plaintiff Turf Master was in privity, as its business operations were the

11

subject of the state litigation.  Defendants also argue that Plaintiffs' constitutional claims raised in this action are inextricably intertwined with the state court judgment, in that Plaintiffs specifically seek declaratory relief that would overturn the state court's findings and assert damages in the form of economic losses and loss of enjoyment of property, which stem from the state court's order and enforcement of the order.  Finally, Defendants assert that the court of appeals' decision on the March 2004 order is considered "final" for purposes of the *Rooker-Feldman* doctrine.

Plaintiffs do not dispute that Plaintiff Glasgow was a party to the state court action or that Plaintiff Turf Master is in privity with Ms. Glasgow.  Instead, Plaintiffs contend that their constitutional claims are not inextricably intertwined with the state court judgment, that they are not appealing any "final" decision of the Colorado Supreme Court, and that the remedy they seek would neither disrupt nor undo any state court judgment since a judgment would be directed to the Defendants rather than to the state court.[2]

The Court finds that the first prong of the *Rooker-Feldman* doctrine is met here since Plaintiff Glasgow was a party to the state court actions (complaint and contempt citation) and Plaintiff Turf Master is in privity with Glasgow.  *See Mo's Express LLC v. Sopkin*, 441 F.3d 1229, 1235 n. 2 (10th Cir. 2006) (parties to a state-court judgment for *Rooker-Feldman* purposes include all persons directly bound by the state-court judgment, whether or not they appear in the case

_____

[2]Plaintiffs also contend that the *Rooker-Feldman* doctrine does not apply, since they are "seeking review of state agency action."  Docket #20 at 6.  The Court summarily rejects this argument since there is no indication in the Complaint that any claims are raised pursuant to the Administrative Procedures Act in this matter.

caption).  In addition, the Court agrees with Defendants that the third prong is met.  Plaintiffs

appealed both the original complaint and the contempt citation to the Colorado Court of Appeals;

however, they allowed the time for appeal to the Colorado Supreme Court to lapse on each matter

before the within action was filed.  Thus, the state court decisions are "final" for purposes of the

*Rooker-Feldman* doctrine.  *See Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006).

As for whether the Plaintiffs' constitutional claims are inextricably intertwined with the state

court decisions, the Court must ask whether the alleged injuries resulted from the state court

judgments and whether the requested relief would place the parties back in the position they

occupied prior to the judgments.  *See Pittsburg County Rural Water Dist.*, 358 F.3d at 707; *see also*

*Mo's Express LLC*, 441 F.3d at 1237.  In other words, if the allegations underlying Plaintiffs' federal

claims would be identical if there had been no state-court proceeding, then *Rooker-Feldman* does

not apply.  *Bolden*, 441 F.3d at 1145.  Plaintiffs allege they have suffered the following injuries:

economic losses, emotional distress and loss of the enjoyment of their property from the loss of their

property interest without due process, discrimination based upon sex, and retaliation due to Plaintiff

Glasgow's public criticism of Defendants.

The Court finds that any attempt by Plaintiffs to seek return of, or economic damages for the

loss of, their property as a result of enforcement of the El Paso County Land Development Code is

barred by *Rooker-Feldman*, since such attempt would seek review of the state court decisions in this

matter.  Under *Rooker-Feldman*, the redress for these alleged injuries is through the state court

appellate process to the United States Supreme Court.  Federal district courts can neither address

these injuries nor review the state court proceedings.  *See* 28 U.S.C. § 1257.

However, any claims raised by Plaintiffs alleging that they were targeted by Defendants, whether based on discrimination or retaliation, for selective enforcement of the Code (*i.e.*, determining to file the complaint and contempt citation, heightened scrutiny, air surveillance, etc.) are not barred by the doctrine, since such claims would be identical had the state courts not enjoined the Plaintiffs from using their property for the landscape business nor cited the Plaintiffs for improper use.  *See Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002), *overruled in part by Exxon Mobil Corp.*, 544 U.S. 280, 291-92 (2005) (a federal court may exercise jurisdiction in cases challenging state procedures for enforcement of a judgment if the propriety of the underlying judgment is not in question).

The Defendants' reliance on the Tenth Circuit's opinion in *Calvert v. Safranek*, 209 F. App'x 816 (10th Cir. 2006) does not change this Court's determination, as the facts set forth in *Calvert* are distinguishable from those in this matter.  Citing violations of his due process rights, the plaintiff in *Calvert* sought an injunction to stop any future actions to enforce a state court's order restricting use of his property.  *Id.* at 819.  Here, the Plaintiffs seek no such remedy.  In addition, the *Calvert* plaintiff sought abrogation of the state court judgment to remedy his equal protection and malicious prosecution claims.  *Id.*  In this case, the Plaintiffs seek economic and noneconomic damages for the alleged equal protection and retaliation violations.

Therefore, the Court finds that Plaintiffs' claims seeking past damages and retrospective

relief[3] for loss of their property due to enforcement of the Land Development Code are barred by the *Rooker-Feldman* doctrine and must be dismissed.

    C.    <u>Statute of Limitations</u>[4]

As stated by Plaintiffs, both in the Complaint and in response to the within motion, their claims arise under various provisions of the United States Constitution.  Specifically, the remaining claims in this action arise under the First Amendment's prohibition against retaliation for freedom of speech and the Fourteenth Amendment's requirement for due process and equal protection under the laws.  Because neither provide private causes of action, claims for relief for violations of these amendments must be (and have been in this case) brought pursuant to 42 U.S.C. § 1983.[5]

"Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules."  *Rosales v. Ortiz*, 325 F. App'x 695, 698

---

[3]Notably, the Tenth Circuit has found that a request for prospective injunctive and declaratory relief do not necessarily disrupt or undo a state court judgment and, thus, may not be barred by the *Rooker-Feldman* doctrine.  *See Mo's Express LLC*, 441 F.3d at 1238.

[4]There is some question whether a statute of limitations issue raised in a Section 1983 action is jurisdictional in nature.  At least one panel of the Tenth Circuit has recognized that a statute of limitations question raised in a Section1983 action is a "jurisdictional issue."  *See McCoy v. Damron*, 9 F. App'x 994, *2 (10th Cir. 2001) (unpublished).  However, in *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128-29 (10th Cir.), *cert. denied*, 502 U.S. 952 (1991), the Tenth Circuit held generally that a dismissal on limitations grounds is a judgment on the merits.

[5]Claim Four seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  However, "[t]he Act does not in itself confer jurisdiction upon federal courts." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  Rather, there must be an independent basis for jurisdiction which, in this case, is found in 42 U.S.C. § 1983 on which federal question jurisdiction is based.

(10th Cir. 2009) (unpublished) (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)).  In Colorado,

Colo. Rev. Stat. § 13-80-102(g) "bars suit filed more than two years after the time the cause of

action accrued."  Section 13-80-102(g) establishes a two-year statute of limitations for "all actions

upon liability created by a federal statute where no period of limitation is provided in said federal

statute."  *Rosales*, 2009 WL 1154875, at *2.  "A § 1983 action 'accrues when facts that would

support a cause of action are or should be apparent.'"  *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th

Cir. 2006) (quoting *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)); *see also Hunt v. Bennett,*

17 F.3d 1263, 1266 (10th Cir. 1994) ("[s]ection 1983 claims accrue, for the purpose of the statute

of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his

action").  In this case, the Complaint was filed on April 17, 2009; therefore, Plaintiffs' claims must

have accrued no earlier than April 17, 2007.

Plaintiffs do not specifically describe whether their claims are brought against certain

Defendants (*see, e.g.,* Claims Three, Four and Five); therefore, the Court will assume that all

remaining claims are brought against all Defendants.  As set forth herein, the Complaint lists a

detailed chronology of events, including conduct alleged to have violated Plaintiffs' constitutional

rights.  It is clear from this chronology that the last actions taken by Officer Jackson were between

November 3, 2006 and December 14, 2006, when she allegedly conducted extensive surveillance

of the Plaintiffs' employees;[6] the last action taken by the Board was on April 4, 2007, when it filed

---

[6]Although it is not clearly described in the Complaint, Officer Jackson may have also conducted surveillance of Plaintiffs' property prior to the filing of the last Motion for Citation for Contempt of Court, filed April 4, 2007.

another Motion for Citation for Contempt of Court (which was later dismissed); and the last action taken by Mr. Louis was on April 11, 2007, when he allegedly filed with the trial court a collection of unsworn statements by angry neighbors protesting the greenhouse and nursery operation. All of these actions occurred outside of the limitations period, and the Plaintiffs do not contest that they either knew or should have known of their injuries at the time these actions were taken. Nor do they state any reason why they did not bring their constitutional claims in the two years after they accrued, since, as stated above, these alleged claims existed even had there been no state court proceedings for injunction as to their property use.

"While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (citations omitted).

Here, Plaintiffs do not argue that the applicable statute of limitations should be tolled. Rather, Plaintiffs claim that they have asserted facts reflecting continuing violations of their constitutional rights. The continuing violation theory "is a creation of federal law that arose in Title VII cases" and "recognizes that certain violations are continuing in nature and provides that a claim asserting such a violation is timely if administrative charges are filed within the period applicable to the last act in the continuing series." *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513 (10th Cir. 1997). To establish a continuing violation, a plaintiff must show that the claimed discriminatory acts that occurred outside the limitations period were sufficiently related to at least one act occurring

17

within the relevant filing period, thereby constituting a continuing pattern of discrimination. *Furr v. AT & T Tech., Inc.,* 824 F.2d 1537, 1543 (10th Cir. 1987).

As a preliminary matter, Plaintiffs have failed to provide any authority in which this circuit has applied the continuing violations doctrine to § 1983 claims. *See Hunt,* 17 F.3d at 1266 (declining to determine if continuing violations doctrine applies to § 1983 suits); *Thomas,* 111 F.3d at 1514 (declining to apply continuing violations doctrine to § 1981 claims because the doctrine "is a creature of the need to file administrative charges" and is not applicable to § 1981 claims, which do not require such charges). Indeed, courts in this district have recognized that the "Tenth Circuit has not determined whether the continuing violation doctrine should be applied to complaints filed under 42 U.S.C. § 1983." *Fogle v. Pierson,* No. 05-cv-01211-MSK-CBS, 2008 WL 821803, at *4 (D. Colo. Mar. 26, 2008) (unpublished opinion). Here, the cases upon which the Plaintiffs rely for support of their continuing violations theory are all Title VII actions: *Bennett v. Quark, Inc.*, 258 F.3d 1220 (10th Cir. 2001)*, Mascheroni v. Board of Regents*, 28 F.3d 1554 (10th Cir. 1994), and *Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410 (10th Cir. 1993).[7]

Additionally, Plaintiffs misconstrue the purpose and application of the doctrine. First, Plaintiffs fail to assert any violation by the Defendants that occurred within the two-year statutory period preceding the Complaint. *See* Complaint at ¶ 32 and ¶ 33 (in neither allegation did Plaintiffs assert that Defendants acted in a way that injured the Plaintiffs). Second, Plaintiffs argue vaguely

---

[7]All of these cases have been abrogated in part by *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). *See Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003).

18

that they were subjected to continuing ill effects ("ongoing persecution") from the Defendants' original actions (air surveillance, false testimony given at a hearing, 20 citations issued to employees, bad faith participation in the state ADR process),[8] not that the Defendants committed further constitutional violations against them within the two-year statutory period preceding the filing of the Complaint. The continuing violations doctrine is triggered by continual unlawful acts, not by continual ill effects from the original violation. *Bergman v. United States,* 751 F.2d 314, 317 (10th Cir. 1984).

Under the governing standard of review in this matter, allegations in the complaint that are *not* entitled to the assumption of truth are those "which are legal conclusion, bare assertions, or merely conclusory." *Iqbal,* 129 S. Ct. at 1949-51. An allegation of "ongoing persecution" is certainly a bare conclusory assertion on which the Plaintiffs apparently base their claims. Under the *Twombly* analysis, such allegation by itself is not sufficient to state a plausible claim for relief for illegal discrimination or retaliation.

Consequently, because there are no factual allegations asserting illegal conduct by the Defendants within the two-year period preceding the filing of the Complaint and Plaintiffs have

---

[8]Plaintiffs point to paragraphs 56, 57 and 62 as evidence of allegations of a continuing pattern of discrimination; however, paragraph 56 contains no allegations of Defendants' conduct, paragraph 62 simply refers to "ongoing persecution," and paragraph 57 lists conduct that is delineated by Plaintiffs as specific concrete acts taken during the time period preceding the two-year limitations period, but such conduct is not alleged any time thereafter. Moreover, Plaintiffs' argument that paragraphs 28, 31, 32, 44 and 57 contain allegations of injury within the limitation period is not persuasive; paragraphs 28 and 31 do *not* reference conduct within the limitations period, paragraph 32 describes conduct taken by the Plaintiffs, and paragraph 44 again lists past conduct delineated as concrete acts taken during the period preceding the limitations period.

19

failed to demonstrate that the limitations period should be tolled, the remaining constitutional claims in this matter are barred by the statute of limitations governing § 1983 actions and the Court is not persuaded that Plaintiffs have sufficiently pled facts giving rise to continuing violations, even to the extent that such doctrine may be applied in this case. Therefore, Plaintiff's remaining constitutional claims must be dismissed.

D.    <u>Remaining Claim</u>

The Plaintiffs assert in Claim Seven that the Defendants' conduct specified herein is a "blatant disregard for the Colorado Right to Farm Act and Colorado Nursery Act" and that they are "entitled to a judicial determination as to whether the Act[s] should be applied to the Plaintiffs' property." Plaintiffs provide no authority under which this Court may adjudicate the claim. To the extent that the state court made a determination as to this question, Plaintiffs' claim is clearly barred by *Rooker-Feldman*. To the extent that the claim is brought pursuant to a constitutional violation, it, too, is barred by the statute of limitations governing § 1983 claims. Or, to the extent that Plaintiffs ask this Court to determine whether Defendants have violated provisions of the Colorado Right to Farm Act and Colorado Nursery Act, the Plaintiffs failed to invoke, and the Court declines to assert, its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate the state law claim. Therefore, the claim is dismissed.

In light of this order disposing of all of Plaintiffs' claims against Defendants for lack of subject matter jurisdiction and failure to state claims for relief, the Court need not address the additional defenses raised by Defendants in the within motion.

**<u>CONCLUSION</u>**

Based upon the foregoing, it is ORDERED that Defendants' Motion to Dismiss Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [underline]filed June 11, 2009; docket #9[/underline]] is **granted** and the Plaintiffs' claims in this matter are dismissed.

DATED this 15th day of September, 2009, in Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge